UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| THE CADLE COMPANY,<br>        Plaintiff,<br><br>        v.<br><br>MARGUERITE FLETCHER and TERRY<br>B. FLETCHER,<br>        Defendants. | No. 3:11-cv-00794 (SRU) |

### RULING ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

This case arises from a debt owed to the plaintiff, The Cadle Company ("Cadle"), by one of the defendants, Terry B. Fletcher ("Fletcher").  The second defendant is Fletcher's wife, Marguerite Fletcher ("Mrs. Fletcher").  Cadle is the judgment creditor with respect to two state court judgments entered against Fletcher amounting to over $3 million, which remain unsatisfied.  Cadle alleges that since at least 2005, Fletcher has transferred to Mrs. Fletcher substantially all of his income.  Cadle has now brought statutory fraudulent transfer claims against the defendants and requested the imposition of a constructive trust.

The Fletchers now move for partial summary judgment arguing that Fletcher's "net residual wages," which they define as wages remaining after allowable deductions and reduction for levy under Connecticut's wage execution statute, are exempt from further collection action, even after deposit in a bank account.  According to the defendants, as property exempt from execution, no transfer of net residual wages can be fraudulent for purposes of the Connecticut Uniform Fraudulent Transfer Act.  On those grounds, the Fletchers argue that they are entitled to summary judgment on all counts of the complaint with respect to any transfer by Fletcher to Mrs. Fletcher (with exceptions concerning trust distributions).  Cadle seeks summary judgment

1

against defendants on its constructively fraudulent transfer claim under Conn. Gen. Stat. § 52-552f, as alleged in the Third Count of its complaint.

For the reasons stated below, I **DENY** defendants' motion for partial summary judgment and **GRANT** plaintiff's motion for partial summary judgment.

**I.      Standard of Review**

   A. Motion for Summary Judgment

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When ruling on cross motions for summary judgment, the court must construe the facts against the moving party when deciding each motion. The court may not weigh the evidence, even when the court believes such evidence is implausible. *See Anderson*, 447 U.S. at 249; *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 58-59 (2d Cir. 1995). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his

pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992).  If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247-48.  To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party."  *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate.  *Celotex*, 477 U.S. at 322.  In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.* at 322-23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim).  In short, if there is no genuine issue of material fact, summary judgment may enter.  *Celotex*, 477 U.S. at 323.

## II. Background[1]

The parties agree that that since at least 2005, Fletcher has transferred to Mrs. Fletcher substantially all of his income, including all compensation he received from the Fletcher-Terry Company (now the FTC Liquidation Company). The transfers occurred when Fletcher endorsed and then deposited, or caused Mrs. Fletcher to deposit, checks to Fletcher from the Fletcher-Terry Company into Mrs. Fletcher's bank accounts. Cadle brought statutory fraudulent transfer claims against the Fletchers on May 13, 2011 to recover Fletcher's transfers to Mrs. Fletcher. On May 24, 2013, Cadle filed a motion for partial summary judgment. The Fletchers filed a cross-motion for partial summary judgment on June 19, 2013, along with a motion to certify a question to the Connecticut Supreme Court. I denied the Fletchers' motion to certify on September 3, 2013.

## III. Discussion

Cadle brings four claims, all under the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §52-552a *et seq.* ("CUFTA" or the "Act"), and the common law doctrine of constructive trusts. Count One alleges fraudulent transfers with an intent to hinder, delay or defraud creditors. Counts Two and Three allege constructively fraudulent transfers. The constructive trust claim, Count Four, differs from the other three counts. Essentially, Cadle alleges that Fletcher is the equitable owner of assets held in Mrs. Fletcher's name and that Mrs. Fletcher has been unjustly enriched at the expense of Fletcher's creditors.[2]

---

[1] The facts set forth here are taken from the parties' Local Rule 56(a) Statements (docs. # 99-1 and 112) and supporting affidavits. The facts are undisputed unless otherwise indicated.

[2] The equitable ownership and unjust enrichment claims stem from a number of alleged facts including: Fletcher's transfer of assets to Mrs. Fletcher, carrying out of financial affairs through Mrs. Fletcher's bank and financial accounts, acquiring real property in her name using Fletcher's income, Fletcher's use and enjoyment of those assets, the disparity between Mrs.

In their motion for partial summary judgment, the Fletchers contend that all of the property that Cadle claims was fraudulently transferred to Mrs. Fletcher was property Cadle was not entitled to under Connecticut's postjudgment statutory scheme, set forth in Chapter 906 of the Connecticut General Statutes.  Specifically, the Fletchers contend that pursuant to those statutes, the balance of property that is kept by a judgment debtor in accordance with a wage garnishment is freely transferrable or usable to support the judgment creditor and his or her family, or for any other proper purpose.  Accordingly, they argue, they are entitled to summary judgment on all counts of the complaint with respect to any transfer by Fletcher to Mrs. Fletcher (with exceptions concerning trust distributions).

In Cadle's motion for partial summary judgment, which involves essentially the same set of facts and issues, the plaintiff seeks summary judgment against defendants on its constructively fraudulent transfer claim under Conn. Gen. Stat. § 52-552f, as alleged in the Third Count of its complaint.

  A. <u>Defendants' Motion for Partial Summary Judgment</u>

CUFTA allows creditors to recover money that a debtor conveys to another in order to avoid a judgment.  The Act defines a "transfer" as "every mode . . . of disposing of or parting with an asset or an interest in an asset . . . ." Conn. Gen. Stat. § 52-552(b)(12).  The Act also defines an asset as "property of debtor," but excludes "property to the extent it is generally exempt under nonbankruptcy law."  Conn. Gen. Stat. § 52-552(b)(2). Section 52-352b lists exempt property, including social security payments and pension payments.  Conn. Gen. Stat. §§

---

Fletcher's relatively modest income in comparison with the assets she has acquired and holds, and Mrs. Fletcher's participation in conduct to shield Fletcher's assets from his creditors.

52-352b(g) & (m). The parties agree that Fletcher's transfer of his social security or pension payments is not at issue here.

The issue in defendants' motion for partial summary judgment is whether the wages Fletcher transferred to Mrs. Fletcher should be considered "property" under the statute. The statute's list of exemptions makes no mention of wages, salary, or stipend for living expenses other than "any wages earned by a public assistance recipient under an incentive earnings or similar program." But another statute, section 52-361a, provides procedures for execution on wages after judgment and limits the amount of an individual's weekly earnings subject to wage garnishment.[3]

In an earlier hearing, the Fletchers argued that by implication, the garnishment statute protects any wages left after garnishment. Without ruling on the issue, I suggested that the Fletchers had misread the scope of the garnishment statute because that provision only limits a court's ability to transfer money to a creditor *before* it reaches a debtor, but is silent concerning a creditor's claim on wages after they reach a debtor's hands.[4] *See* Hr'g Tr. 4:3-17:21, Feb. 17, 2012 (doc. # 84). In this motion, the Fletchers argue that another statute, section 52-367b, exempts net residual wages from execution. Specifically, they argue that funds in Mrs. Fletcher's account are wages and exempt from execution under the financial institution execution statute, section 52-367b, when that statute is read together with the wage execution statute, section 52-361a.

---

[3] Under section 52-361a(f) a court must limit the amount of weekly earnings subject to levy or other withholding for payment of a judgment to the lesser of: (1) twenty-five percent of his disposable earnings for that week, or (2) the amount by which his disposable earning for the week exceed forty times the higher of the minimum hourly wage under the Fair Labor Standards Act or the full minimum fair wage established by section 31-58(j).

[4] Cadle argues that under the "law of the case" doctrine, I have already decided the issue in its favor. Although I expressed support for Cadle's view, I did not expressly decide the issue. Accordingly, the law of the case doctrine does not apply here.

The interpretation of section 52-367b is a state law question governed by Connecticut caselaw. *See Bensmiller v. E.I. Dupont de Nemours*, 47 F.3d 79, 82 (2d Cir. 1995). The Connecticut Supreme Court has not yet directly addressed the interpretation of section 52-367b as it relates to the facts of this case. Therefore, this court must "carefully . . . predict how the highest court of the forum state would resolve the uncertainty. . . ." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994). In doing so, I must carefully review all the resources that would be available to the state's highest court, including the statutory language, legislative history, statutory scheme, decisional law, and any other reliable data. *See id.* at 119. Thus, I will construe section 52-367b according to Connecticut's well-established rules concerning statutory interpretation. Under Connecticut law, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." *Del Toro v. City of Stamford*, 270 Conn. 532, 540 (2004).

Section 52-367b lists statutes the court must examine to determine whether debts due from a financial institution are exempt from execution. It provides:

> <u>Execution may be granted pursuant to this section against any debts due from any financial institution to a judgment debtor who is a natural person, except to the extent such debts are protected from execution by</u> sections 52-352a, 52-352b, 52-352c of the general statutes, revision of 1958, revised to 1983, 52-354 of the general statutes, revision of 1958, revised to 1983, 52-361 of the general statutes, revision of 1958, revised to 1983 and <u>section 52-361a</u>, as well as by any other laws or regulations of this state or of the United States which exempt such debts from execution.

Conn. Gen. Stat. § 52-367b(a) (emphasis added). Cadle argues that this statute does not apply because: (1) Fletcher never deposited his paychecks into <u>his</u> bank account and, instead,

7

negotiated his paychecks to his wife, who deposited them into her bank accounts; and (2) the statute functions differently than the Fletchers claim.

Cadle is correct on both points. First, even if there were some protection for "net residual wages," once Fletcher transfers those wages to his wife's account, he can no longer seek protection from execution under the statute. The money is no longer in his hands or in his bank account. Neither this nor any other statute requires a judgment creditor to determine which monies in a third-party bank account are a judgment debtor's exempt wages, likely because monies are fungible and such a requirement would be impracticable. Second, the statute is clearly addressed to financial institutions. In my view, the plainest meaning of the exemption in subsection (a) of section 52-367b is that it ensures that when a judgment debtor is owed a debt by a financial institution, and a judgment creditor seeks to execute against that debt directly from the financial institution, in the situation where the judgment debtor is an employee of the financial institution, that employee's wages are protected under the wage garnishment rules. In other words, it tells the judgment creditor to abide by the limitations of the wage garnishment statute when it attempts to collect on debts a financial institution owes to a judgment debtor who is the financial institution's employee and those debts are wages owed to that employee. I think it is as simple as that. The statute does not provide a blanket exemption for all wages once they are garnished and then placed in a bank account, or even if they are not garnished and placed in a bank account.

The Fletchers have cited a Connecticut Superior Court case, *Discover Bank v. Marchetti*, 2012 WL 3064665, at * 3 (Conn. Super. Ct. June 21, 2012), which held that the financial execution statute, when read with the wage garnishment statute, leads to the conclusion that a judgment creditor cannot avoid the limitations on the wage garnishment statute by waiting for

the debtor to deposit his or her paycheck and then levying on the entire sum. The court reasoned that to read the statute otherwise would render the language in the financial execution statute referring to the wage garnishment statute meaningless. My interpretation, however, gives meaning to the exemption language in the financial execution statute.

Without discussing the purpose of the statute, in *Cadle Co. v. Jones*, 2004 WL 2049321 (D. Conn. Aug. 20, 2004), a District of Connecticut court held that Connecticut's garnishment provisions had no effect on CUFTA's exemptions. In *Jones*, a debtor had transferred his entire salary to his wife. When a creditor tried to collect money based on those assets, Jones claimed that CUFTA did not apply because the only way to reach a debtor's wages was to request that a court enter a garnishment order. The district court disagreed: "the statute's plain language makes clear that the provisions of 52-361a are limited to the circumstances of wage execution, and therefore [subsection f] does not render [transferred salary] exempt [under CUFTA]." *Id.* at *6.

The Supreme Court used similar logic to hold that the federal Consumer Credit Protection Act did not insulate a tax refund from a bankruptcy proceeding. In *Kokoszka v. Belford*, 417 U.S. 642 (1974), a bankruptcy trustee sought to treat a tax refund as property of the bankruptcy estate. Kokoszka claimed that the tax refund should be treated as income, and since his income was already subject to garnishment, the refund could not become part of the bankruptcy estate. The Supreme Court disagreed. "There is every indication that Congress, in an effort to avoid the necessity of bankruptcy, sought to regulate garnishment," the Court conceded. And according to the Court, refunds did not meet the narrow definition of "income" subject to garnishment. But it went on to say that "[t]here is no indication, however, that Congress intended to drastically alter the delicate balance of . . . protections . . . during [a] bankruptcy procedure," and the Court "therefore agree[d ] that the Consumer Credit Protection Act does not

9

restrict the right of the trustee to treat the income tax refund as property of the bankrupt's estate." In other words, though the refund was not "income," that merely meant that it could not be garnished, not that it was also exempt from inclusion in a bankruptcy estate.

The same is true here: The remainder of Fletcher's wages could not be "garnished." But that has no bearing on whether a creditor can recover those assets under some parallel statutory regime—in the *Kokoszka* case, a bankruptcy proceeding, and here, a CUFTA or unjust enrichment proceeding. Section 52-367b does not exempt Fletcher's "net residual wages" from execution.

    B.  <u>Plaintiff's Motion for Partial Summary Judgment</u>

Cadle seeks summary judgment on its claim that Fletcher's endorsement and deposit of his paychecks into Mrs. Fletcher's bank accounts for four years prior to the commencement of this civil action are constructively fraudulent transfers pursuant to Conn. Gen. Stat. section 52-552f and that Mrs. Fletcher is liable to Cadle for money damages.

Section 52-552f of the Connecticut General Statutes provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Conn. Gen. Stat. § 52-552f(a). Thus, Cadle must prove by clear and convincing evidence that (1) there has been a transfer of an asset that was non-exempt property; (2) the debt to Cadle was owed before the transfer; (3) the transfer was made without receiving reasonably equivalent value in exchange; and (4) Fletcher was insolvent at the time of the transfer. *See Cadle Co. v. Jones*, 2004 WL 2049321, at *7 (D. Conn. Aug. 20, 2004). Cadle argues that there is no genuine disputed issue of material fact with respect to whether: (1) Fletcher made transfers to Mrs. Fletcher; (2) Fletcher did not receive a reasonably equivalent value in exchange for the transfer;

10

(3) Fletcher was insolvent throughout the time the transfers occurred; and (4) Cadle was a creditor of Fletcher whose claims against him arose before June 2007.  And the parties have stipulated that Fletcher has been insolvent throughout the relevant period of time, have admitted that Fletcher transferred over $300,000 in paychecks to Mrs. Fletcher over that period, and that Cadle was a creditor throughout this period and before the transfers occurred.  Because the transfers were comprised of non-exempt proceeds, and the parties have stipulated that Mrs. Fletcher did not provide reasonably equivalent value in exchange, there is no disputed issue of material fact with respect to any element of the plaintiff's constructive fraud claim.  Accordingly, plaintiff is entitled to summary judgment with respect to liability on Count Three of its complaint.

## IV. Conclusion

For the reasons stated above, I **DENY** defendants' motion for partial summary judgment and **GRANT** plaintiff's motion for partial summary judgment with respect to liability on Count Three.

It is so ordered.

Dated at Bridgeport, Connecticut, this 19th day of November 2013.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge